1
2
3
4
5
6
7
8                            UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11   JUAN ROBERTO MAZARIEGOS              No. 2:17-cv-00809-TLN-DMC
     KOOSEMANS,
12
                 Plaintiff,
13                                        **ORDER**
           v.
14
     SISKIYOU JOINT COMMUNITY
15   COLLEGE, DENNIS WEATHERS, and
     DOES 1 through 10,
16
                 Defendants.
17

18

19          This matter is before the Court on Defendants Siskiyou Joint Community College and

20   Dennis Weathers' ("Weathers") (collectively, "Defendants") Motion for Summary Judgment.

21   (ECF No. 22.)  Plaintiff Juan Roberto Mazariegos Koosemans ("Plaintiff") has filed an opposition

22   (ECF No. 25), and Defendants have filed a reply (ECF No. 27).  For the reasons set forth below,

23   Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.  (ECF

24   No. 22.)

25   ///

26   ///

27   ///

28   ///

                                              1

1          **I.     FACTUAL AND PROCEDURAL BACKGROUND**

2          Plaintiff is a former Spanish instructor at the College of the Siskiyous ("COS") who seeks

3    damages for his allegedly wrongful termination.  Plaintiff worked for the Siskiyou Joint

4    Community College District (the "District") from Fall 1996 through Spring 2016, and he was the

5    only Spanish instructor at the time of his termination.  (Defs.' Statement of Undisputed Facts

6    ("DSUF") ¶¶ 3–4, ECF No. 22-2.)  In an effort to improve the District's financial health,

7    administrators, members of the President's cabinet, and various deans were asked to review the

8    cost-effectiveness of the programs at COS.  (*Id.* at ¶¶ 6–7.)  The District was not required to offer

9    Spanish.  (*Id.* at ¶ 9.)  The Superintendent subsequently made a recommendation to the Board of

10   Trustees (the "Board") to eliminate the Spanish program, which the Board voted unanimously to

11   do.  (*Id.* at ¶¶ 10–11.)

12         On March 11, 2015, Plaintiff was served with a notice that his position would be

13   eliminated in the 2015–2016 academic year (*id.* at ¶ 12), which Plaintiff maintains was a notice

14   that only *recommended* to the Board that his position be eliminated (Pl.'s Statement of Disputed

15   Facts ("PSDF") ¶ 12, ECF No. 25-1).  Plaintiff challenged the notice through an administrative

16   hearing over which Administrative Law Judge ("ALJ") Karl Engeman presided on April 13,

17   2015.  (DSUF ¶¶ 13–14.)  ALJ Engeman found the Board's decision to eliminate Spanish "was

18   neither arbitrary nor capricious, and was a proper exercise of its discretion." (*Id.* at ¶ 16.)

19   However, he also found the decision to eliminate a 1.0 full time equivalent ("FTE") was not

20   warranted and recommended only a 0.7 FTE reduction.[1]  (PSDF ¶ 16 (citing ECF No. 25-3 ¶¶ 25–

21   27).)

22         Despite this recommendation, the Board proceeded to issue Plaintiff a notice on May 14,

23   2015 that 1.0 FTE would not be needed beginning in the 2015–2016 academic year.  (DSUF ¶ 17;

24   *see also* ECF No. 24-4 at 58.)  Plaintiff then filed a petition for writ of administrative mandate in

25   Siskiyou County Superior Court to review this decision (the "writ proceeding"), which was heard

26   before Commissioner Joann Bicego on April 15, 2016.  (DSUF ¶ 19.)  Commissioner Bicego

27   ─────────────────────

28   [1]      An FTE reduction is when an employee's standard work hours are adjusted from full-time to part-time.

1    issued a proposed decision on May 24, 2016, giving both parties an opportunity to respond (*id.* at

2    ¶ 21), and then issued a final decision on June 21, 2016 (*id.* at ¶ 22).  The commissioner held that

3    in light of the "fiscal and administrative difficulties . . . and the historically low enrollment in its

4    Spanish classes, the Board reasonably exercised its discretion to reduce services" (*id.* (citing ECF

5    No. 24-2 at 81)), but also that "the Board prejudicially abused its discretion in eliminating the 1.0

6    FTE Spanish instructor position held by [Plaintiff] when the actual reduction was 0.7 FTE"

7    (PSDF ¶ 22 (citing ECF No. 24-2 at 81)).  Plaintiff did not appeal Commissioner Bicego's

8    decision.  (DSUF ¶ 23.)

9         Despite the layoff notice, the District scheduled a Spanish course for each semester of the

10   2015–2016 academic year and Plaintiff was rehired part-time to teach Spanish I in Fall 2015 and

11   Spanish II in Spring 2016, thereby retaining 0.33 FTE of his position.  (*Id.* at ¶¶ 24, 26–27.)  The

12   Board voted unanimously again to eliminate the Spanish program beginning in the 2016–2017

13   academic year and issued Plaintiff a second notice on March 3, 2016 that terminated him from

14   further employment at COS.  (*Id.* at ¶¶ 29–30.)  Plaintiff again challenged this notice through an

15   administrative hearing over which ALJ Stephen J. Smith presided on April 26, 2016.  (*Id.* at ¶

16   32.)  ALJ Smith issued a proposed decision finding the Board's decision to eliminate the Spanish

17   program "was a proper exercise of its discretion."  (*Id.* at ¶ 35 (citing ECF No. 24-2 at 10).))

18   Plaintiff did not request reconsideration of ALJ Smith's decision, nor did he file a petition for writ

19   of administrative mandate for judicial review of the decision.  (*Id.* at ¶¶ 36–37.)

20        Concurrently with his administrative writ proceedings, Plaintiff also contested the

21   District's layoff notices by submitting complaints through the U.S. Equal Employment

22   Opportunity Commission ("EEOC").  (*See id.* at ¶¶ 38–48.)  On January 6, 2016, Plaintiff filed an

23   equal employment opportunities ("EEO") complaint internally with COS alleging he had "been

24   laid-off, denied an opportunity to teach Spanish courses in the Summer of 2015, denied health

25   insurance, defamed, discriminated against, and treated differently in the privileges, terms and

26   conditions of [his] employment based on [his] national origin, ancestry, and age."  (*Id.* at ¶ 38.)

27   On January 25, 2016, the District received an EEOC Notice of Charge of Discrimination, Charge

28   No. 550-2016-00311 (the "first EEOC charge"), filed jointly with the California Department of

Fair Employment and Housing ("DFEH").  (*Id.* at ¶¶ 39, 41.)  The charge notified the District of Plaintiff's allegations of discrimination and retaliation based on his national origin and age for acts that occurred March 1, 2015 through May 14, 2015.  (*Id.* at ¶ 39.)  The charge alleges Plaintiff was initially told by "the new Dean of Student Learning" that his full-time position would be reduced to one class per semester with health benefits, but he received a letter in May 2015 that stated he would not be reemployed for the 2015–2016 academic year.  (*Id.* at ¶ 43.)  The charge also alleges "the new interim Dean of Instruction made offending ethnic and racial comments about Latinos in general."  (*Id.*)  The District filed a response to dispute this charge in May 2016.  (*Id.* at ¶ 44.)  On April 7, 2016, the District received a second EEOC Notice of Charge of Discrimination, Charge No. 550-2016-00561 (the "second EEOC charge"), also filed jointly with DFEH.  (*Id.* at ¶ 45.)  The second EEOC charge notified the District of Plaintiff's allegations that the second written notice of elimination of his position was issued in retaliation for the first EEOC charge.  (*Id.* at ¶ 46.)  The District filed a response to this charge on June 23, 2016.  (*Id.* at ¶ 47.)  On January 12, 2017, the EEOC issued right to sue letters for both charges. (*Id.* at ¶ 48.)

Meanwhile, on August 8, 2016, Plaintiff filed a government tort claim against "California Community Colleges, Siskiyou Joint Community College District, and Dennis Weathers," alleging Weathers had published defamatory statements between January 1, 2015 and May 1, 2015, regarding Plaintiff's involvement in the theft of funds from COS.  (*Id.* at ¶ 49.)  To support his late filing, Plaintiff maintains that he did not learn of these remarks until an email from Ahmed Ismail ("Ismail") on March 30, 2016.  (*Id.* at ¶ 50.)  On September 14, 2016, the District's claims administrator sent a letter formally rejecting Plaintiff's government tort claim.[2]  (*Id.* at ¶ 51.)

On April 17, 2017, Plaintiff filed a Complaint in this Court, alleging claims for: (1) age discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"); (3)

---

[2]    Plaintiff argues this letter is inadmissible (PSDF ¶ 51), but as addressed herein, the Court finds this letter is proper for judicial notice.

1  national origin discrimination in violation of FEHA; (4) national origin discrimination in

2  violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (5) race discrimination in

3  violation of FEHA; (6) race discrimination in violation of Title VII; (7) retaliation in violation of

4  FEHA; (8) retaliation in violation of Title VII; and (9) defamation.  (ECF No. 1 at 11–19.)  On

5  September 20, 2018, Defendants filed the instant motion for summary judgment.  (ECF No. 22.)

6  On October 4, 2018, Plaintiff filed an opposition (ECF No. 25), and on October 11, 2018,

7  Defendants filed a reply (ECF No. 27).

8  **II.    STANDARD OF LAW**

9  Summary judgment is appropriate when the moving party demonstrates no genuine issue

10  of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

11  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

12  judgment practice, the moving party always bears the initial responsibility of informing the

13  district court of the basis of its motion, and identifying those portions of "the pleadings,

14  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

15  which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

16  *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

17  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

18  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

19  324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

20  party who does not make a showing sufficient to establish the existence of an element essential to

21  that party's case, and on which that party will bear the burden of proof at trial.

22  If the moving party meets its initial responsibility, the burden then shifts to the opposing

23  party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.*

24  *Co. v. Zenith Radio Corp.* (*Matsushita*), 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v.*

25  *Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this

26  factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required

27  to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,

28  in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party

1   must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome

2   of the suit under the governing law, and that the dispute is genuine, *i.e.*, the evidence is such that

3   a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,*

4   *Inc.*, 477 U.S. 242, 248, 251–52 (1986).

5        In the endeavor to establish the existence of a factual dispute, the opposing party need not

6   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8   trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

9   to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

10   trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

11   amendments).

12        In resolving the summary judgment motion, the court examines the pleadings, depositions,

13   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

14   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

15   of the opposing party is to be believed and all reasonable inferences that may be drawn from the

16   facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

17   at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

18   obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

19   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

20   1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

21   "must do more than simply show that there is some metaphysical doubt as to the material facts."

22   *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of

23   fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

24       **III.**    **ANALYSIS**

25        Defendants move for summary judgment as to all of Plaintiff's claims, arguing: (1)

26   Plaintiff's claims alleging discrimination and retaliation (Claims One through Eight) are time-

27   barred, claim-barred, and issue-barred; (2) Plaintiff's claims alleging race discrimination (Claims

28   Five and Six) are barred for failure to exhaust administrative remedies; (3) the elements of

1  Plaintiff's claims alleging race, age, and national origin discrimination and retaliation (Claims

2  One through Eight) cannot be proven; and (4) Plaintiff's claim alleging defamation (Claim Nine)

3  is time-barred, or in the alternative, the elements of the claim cannot be proven.  (*See* ECF No.

4  22-1.)  The Court will first address Defendants' objections to Plaintiff's evidence (ECF No. 28),

5  then Defendants' Request for Judicial Notice (ECF No. 24), and finally evaluate each argument in

6  turn.

7  A.      Defendants' Objections to Plaintiff's Evidence

8  Defendants filed three objections to Plaintiff's evidence in support of his opposition.  (*See*

9  ECF No. 28.)  First, Defendants argue Plaintiff's statement of disputed material facts should be

10  stricken as improper because he submitted about seven pages of "additional disputed material

11  facts" which are "obliquely stated, compound, misstate[ments of] prior testimony, unsupported by

12  evidence in the record, or only able to be supported by evidence that would not be admissible at

13  trial." (*Id.* at 1–2.)  The additional disputed material facts Plaintiff proffers largely reflect the

14  same factual statements set forth in his own declaration.  (*Compare* ECF No. 25-1 *with* ECF No.

15  25-3.)  As the additional factual statements are not violative of Local Rule 260(f), which provides

16  that "the 'Statement of Disputed Facts' shall be limited to . . . the facts the opposing party

17  contends are in dispute," the Court will consider these objections in conjunction with the

18  objections made with respect to the declarations themselves.  E.D. Cal. L.R. 260(f).

19  Second, Defendants argue Plaintiff's declarations from various witnesses were submitted

20  in bad faith in violation of Rule 56(c)(4) and therefore Defendants may be entitled to

21  reimbursement of their reasonable expenses, including attorneys' fees.  (ECF No. 28 at 2.)

22  Defendants specifically note Plaintiff's own declaration is not based on personal knowledge of

23  the facts, but rather "support 'facts' that have no other evidentiary basis, and in some cases

24  support statements allegedly made by others."  (*Id.*)  The Court declines to strike these

25  declarations as it is clear from the context that substantial portions of the declarations cover topics

26  that are within the declarant's personal knowledge and competency.  *See generally Barthelemy v.*

27  *Air Line Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) ("That Rule 56(e)'s requirements of

28  personal knowledge and competence to testify have been met may be inferred from the affidavits

7

1   themselves."). For example, Plaintiff's declaration covers conversations he had with other COS

2   staff (including Weathers), the notices regarding his employment he personally received, and his

3   participation in the proceedings challenging his layoff notices. (*See generally* ECF No. 25-3.)

4         Third, Defendants argue Plaintiff failed to properly file the transcript of Board Member

5   Carol Cupp's comments made during the May 12, 2015 Board Meeting (Ex. 9, ECF No. 25-4 at

6   9–11) and referenced in paragraph four of Kevin Schwin's declaration (ECF No. 25-4 at 2), as

7   required by Local Rule 133. (ECF No. 28 at 3.) Specifically, Defendants state Plaintiff violated

8   Local Rule 133(j), which pertains to filing requirements for depositions. *See* E.D. Cal. L.R.

9   133(j). However, Local Rule 133(j) is not applicable to Exhibit 9, which is not a deposition but a

10  transcript of a board meeting's proceedings. Furthermore, Exhibit 9 to Kevin Schwin's

11  declaration appears to have been properly filed pursuant to Local Rule 133(a). *See* E.D. Cal. L.R.

12  133(a) (requiring all filings, including "exhibits, and all other documents in an action" be

13  electronically filed "except as otherwise provided by these Rules."). Accordingly, the Court

14  disagrees that Exhibit 9 was improperly filed.[3]

15        Based on the foregoing, Defendants' objections are overruled.

16              B.      Defendants' Request for Judicial Notice

17        As a preliminary matter, Defendants request the Court to take judicial notice of Exhibits A

18  through Q, the documents pertaining to Plaintiff's state administrative and EEOC proceedings.

19  (*See* ECF No. 24.) Plaintiff objects only to judicial notice of Exhibit Q (*see* ECF No. 25 at 22–

20  23), discussed in further detail below.

21        Judicial notice allows a court to consider an adjudicative fact "if it is not subject to

22  reasonable dispute." Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute if it can be

23  "accurately and readily determined from sources whose accuracy cannot reasonably be

24  questioned." Fed. R. Evid. 201(b)(1)–(2).

25  _____

[3]      The Court notes here that Defendants' objection to this transcript is not well-taken. In
26  fact, the arguments Defendants make to support judicial notice of Exhibit Q could be made to
    support the Court's consideration of this transcript. Indeed, Plaintiff could have requested
27  judicial notice of this transcript as being incorporated by reference, since it was referenced by the
    commissioner's decision (Ex. G, ECF No. 24-2 at 56) — which Defendants seek to judicially
28  notice — and relied upon to make that decision.

1    The Court may take judicial notice of publicly available records.  *Foster Poultry Farms v.*

2  *Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012).  This includes

3  "hearing transcripts," "the records and reports of administrative bodies," "the proceedings and

4  determinations of the courts," and "documents on file in federal or state courts."  *Id.*; *United*

5  *States v. Richie*, 342 F.3d 903, 909 (9th Cir. 2003) (internal quotations omitted); *Emrich v.*

6  *Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988); *Harris v. Cty. of Orange*, 682 F.3d

7  1126, 1132 (9th Cir. 2012).  Exhibits A through H are all publicly available records.[4]

8  Accordingly, Defendants' Request for Judicial Notice of Exhibits A through H is GRANTED.

9    Courts have found EEOC and DFEH forms appropriate for judicial notice.  *Adetuyi v. City*

10  *& Cty. of San Francisco*, 63 F. Supp. 3d 1073, 1080–81 (N.D. Cal. 2014) (granting defendant's

11  request to take judicial notice of plaintiff's EEOC intake questionnaire and DFEH charge, the

12  EEOC and DFEH letters indicating receipt of the questionnaire and charge, and the DFEH right-

13  to-sue letter); *see also Nkwuo v. Santa Clara Cty. Hum. Res.*, No. 16-cv-06741-BLF, 2017 WL

14  3605229, at *3 (N.D. Cal. Aug. 21, 2017) (granting judicial notice of plaintiff's EEOC charge and

15  defendant's response).  Exhibits I through O are EEOC forms and responses by the District.[5]

16  _____

17  [4]    Exhibit A is the hearing transcript from Case No. 2015040059 before ALJ Karl Engeman,
     dated April 13, 2015.  (ECF No. 24-1 at 1–71.)  Exhibit B is the proposed decision of ALJ Karl

18  Engeman in the same case, dated April 20, 2015.  (*Id.* at 72–82.)  Exhibit C is a hearing transcript
     from Case No. 2016031085 before ALJ Stephen J. Smith, dated April 25–26, 2016.  (*Id.* at 83–

19  145.)  Exhibit D is the proposed decision of ALJ Stephen J. Smith in Case No. 2016031085,
     dated June 29, 2016.  (ECF No. 24-2 at 1–39.)  Exhibit E is the first amended petition for a writ of

20  mandate filed in Siskiyou County Superior Court ("SCSC"), Case No. SC CV PT 15-00699, on
     June 24, 2015.  (*Id.* at 40–51.)  Exhibit F consists of the minutes from a hearing on the petition in

21  SCSC Case No. SC CV PT 15-00699, dated April 15, 2016.  (*Id.* at 52–54.)  Exhibit G is the
     tentative decision/proposed statement of decision of Commissioner Joann Bicego on the petition

22  in SCSC Case No. SC CV PT 15-00699, dated May 24, 2016.  (*Id.* at 55–69.)  Exhibit H is the
     judgment on the petition in SCSC Case No. SC CV PT 15-00699, dated August 15, 2016.  (*Id.* at

23  70–89.)

24  [5]    Exhibit I is Plaintiff's internal EEO complaint, dated January 6, 2016.  (ECF No. 24-2 at

25  90–95.)  Exhibit J is the EEOC notice of charge and Charge No. 550201600311.  (*Id.* at 91–105.)
     Exhibit K is the District's response, with exhibits, to EEOC Charge No. 550201600311.  (ECF

26  No. 24-3.)  Exhibit L is the EEOC notice of charge and Charge No. 550201600561.  (ECF No.
     24-4 at 1–14.)  Exhibit M is the District's response, with exhibits, to EEOC Charge No.

27  550201600561.  (*Id.* at 15–177.)  Exhibit N is the EEOC right to sue letter for Charge No.

28  550201600311, dated January 12, 2017.  (*Id.* at 178–81.)  Exhibit O is the EEOC right to sue

1    Accordingly, Defendants' Request for Judicial Notice of Exhibits I through O is GRANTED.

2           "Some courts have taken judicial notice of [government] claims and their rejection on the

3    ground such documents are public records recounting facts capable of ready determination by

4    turning to sources whose accuracy cannot be questioned."  *Deen v. City of Redding*, Civ. No. S-

5    13-1569 KJM CMK, 2014 WL 1513353, at *2–3 (E.D. Cal. Apr. 11, 2014) (citing cases).

6           Exhibit P is the government claim form signed by Kevin Schwin on behalf of Plaintiff,

7    dated August 8, 2016.  (ECF No. 24-4 at 186–90.)  As judicial notice of Exhibit P is unopposed,

8    Defendants' Request for Judicial Notice of Exhibit P is GRANTED.

9           Exhibit Q is the letter from Keenan & Associates regarding rejection of Plaintiff's

10   government claim, dated September 14, 2016.  (*Id.* at 191–93.)  Plaintiff objects to judicial notice

11   of this letter on multiple grounds, including the following: (1) the Court cannot take judicial

12   notice of the truth of the matters within the letter; (2) the letter lacks authentication; (3) the letter

13   "is not bates stamped, nor do Defendants provide evidence as to the chain of custody or any

14   evidence from the signatory"; (4) the letter is inadmissible hearsay under Federal Rule of

15   Evidence 802; and (5) Defendants failed to establish an adequate foundation to admit the

16   document as evidence.  (ECF No. 25 at 22–23.)

17          In reply, Defendants maintain Plaintiff does not dispute the truth of the matter asserted

18   (and in fact acknowledges the District rejected his government claim in his Complaint), but rather

19   disputes the inadmissibility of the form of the letter.  (ECF No. 27 at 10 (citing ECF No. 1 at 11).)

20   Defendants contend the letter references a decision made during a meeting of the Board, the

21   agenda and minutes for which are matters of public record and readily available to Plaintiff.  (*Id.*)

22   Defendants maintain they "have submitted declarations under oath by the persons most

23   knowledgeable at the District and at Keenan, which authenticate the validity of the documents."

24   (*Id.* at 11.)  Defendants finally argue that this letter falls under the Federal Rules of Evidence

25   803(6) and 803(8) exceptions to hearsay, as records of regularly-conducted business activities and

26   public records.  (*Id.*)

27   _____

28   letter for Charge No. 550201600561, dated January 12, 2017.  (*Id.* at 182–85.)

1   The Court has examined Exhibit Q and finds Defendants have the better argument.  The

2   Court finds this letter proper for judicial notice, as it "recount[s] facts capable of ready

3   determination by turning to sources whose accuracy cannot be questioned."  *Deen*, 2014 WL

4   1513353, at *2–3.  Accordingly, Defendants' Request for Judicial Notice of Exhibit Q is

5   GRANTED.

6              C.       Discrimination and Retaliation Claims (Claims One through Eight)

7                   i.       *Time-Barred*

8   Defendants argue Plaintiff failed to file his EEOC charge within 300 days of when the

9   alleged unlawful employment action occurred and failed to file the instant suit within the 90 days

10  of the EEOC issuing the right to sue letters.  (ECF No. 22-1 at 15–16.)  In opposition, Plaintiff

11  maintains each alleged unlawful employment action was timely challenged under Title VII, the

12  ADEA, and FEHA and that his suit was timely filed.  (ECF No. 25 at 8, 10.)

13  With respect to filing an EEOC charge, if a Title VII complainant "initiates proceedings

14  with a state or local agency with authority to grant or seek relief from the alleged unlawful

15  employment practice . . . the complainant has 300 days after the alleged employment practice

16  occurred, or 30 days after receiving notice of termination of state and local proceedings,

17  whichever is earlier," to file a charge of discrimination.  *Duffy v. Ladbroke Corp.*, 246 F.3d 673,

18  2000 WL 1861827, at *2 (9th Cir. Dec. 18, 2000) (citing 42 U.S.C. § 2000e-5(e)(1)).  "This

19  requirement is subject to waiver, estoppel, and equitable tolling."  *Id.* (citing *Zipes v. Trans World*

20  *Airlines*, 455 U.S. 385, 398 (1982)).  The Supreme Court has interpreted the term "practice"

21  within the statute "to apply to a discrete act or single 'occurrence,' even when it has a connection

22  to other acts."  *Nat'l R.R. Passenger Corp. v. Morgan* (*Nat'l R.R.*), 536 U.S. 101, 111 (2002).

23  "Each discrete discriminatory act starts a new clock for filing charges alleging that act" and "[t]he

24  existence of past acts and the employer's prior knowledge of their occurrence . . . does not bar

25  employees from filing charges about related discrete acts so long as the acts are independently

26  discriminatory and charges addressing those acts are themselves timely filed."  *Id.* at 111–13

27  (citing *Int'l Union of Elec., Radio and Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers,*

28  *Inc.*, 429 U.S. 229, 234 (1976); *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977); *Delaware*

1    *College v. Ricks*, 449 U.S. 250 (1980)).

2         Here, Defendants argue that since the first and second EEOC charges were filed on

3    January 21, 2016 and March 25, 2016, the charges could only address conduct happening on or

4    after March 31, 2015 and May 30, 2015, respectively (300 days prior to each filing date).  (ECF

5    No. 22-1 at 15.)  Curiously, Defendants note Plaintiff's first EEOC charge alleges the unlawful

6    acts occurred from *March 1, 2015* through May 14, 2015, but argue Plaintiff is time-barred from

7    bringing claims for acts that predate March 31, 2015.[6]  (*Id.*)  In opposition, Plaintiff asserts the

8    clock only began to run on his Title VII claims on May 14, 2015, when he received notice that the

9    Board adopted ALJ Engeman's decision and proceeded with the 1.0 FTE layoff — not when he

10   received the March 11, 2015 notice merely recommending his termination to the Board.  (ECF

11   No. 25 at 9–10.)  Plaintiff lists the following adverse employment actions as timely challenged:

12            (1) the May 14, 2015 Final Decision to modify ALJ Engeman's
              decision and proceed with a 1.0 FTE layoff; (2) Weathers' refusal to
13            allow Plaintiff to teach a summer study abroad course in the summer
              of 2015; (3) [the District's] refusal to allow Plaintiff to teach online
14            courses in the Fall 2015 and Spring 2016 semesters; (4) [the
              District's] denial of health care benefits to Plaintiff for the Fall
15            2015/Spring 2016 academic year; and (5) the Spring 2016 layoff.

16   (*Id.* at 8.)

17         Based on the record before it, the Court cannot definitively say that Plaintiff's EEOC

18   charges were not timely filed.  It appears the clock on Plaintiff's termination only started to run

19   on May 14, 2015.  The March 11, 2015 notice explicitly stated the Superintendent/President Scott

20   Thomason is "*recommending* to the [Board] that [Plaintiff's] services be reduced or discontinued

21   in the amount of 1.0 FTE" and that Plaintiff "may request a hearing to determine if there is cause

22   for not reemploying [him] in the ensuing school year."  (ECF No. 24-4 at 46–47 (emphasis

23   added).)  The May 14, 2015 notice, by contrast, notified Plaintiff that the Board determined at its

24   May 12, 2015 meeting that he "[would] not be reemployed for the 2015–2016 academic year"

25   and enclosed a copy of "the Board's Final Decision."  (*Id.* at 58.)  The language of both letters

26

27   ───────────────────
     [6]    While Defendants maintain "the most recent fact [Plaintiff] can identify in support of his
28   allegations is from Fall 2014 and pre-dates the 300-day deadline," they fail to identify the fact
     supporting this contention.  (*See* ECF No. 22-1 at 15.)

1   indicates Plaintiff's termination — the adverse employment action at issue — was final on May

2   14, 2015.  Alternatively, even if the March 11, 2015 notice constitutes a discriminatory act for

3   which Plaintiff is time-barred from filing an EEOC charge, the May 14, 2015 notice was arguably

4   an additional discriminatory act for which the 300-day clock started again for filing charges

5   alleging the unlawful nature of that act.  *See Nat'l R.R.*, 535 U.S. at 111.[7]

6          With respect to whether Plaintiff timely filed suit within 90 days of the EEOC issuing the

7   right to sue letters, Plaintiff is correct that there is a rebuttable presumption of receipt of the right

8   to sue letter three days after its issuance.  (ECF No. 25 at 10); *Payan v. Aramark Mgmt. Serv. Ltd.*

9   *P'ship*, 495 F.3d 1119, 1125 (9th Cir. 2007); *Dandino, Inc. v. U.S. Dep't of Transp.*, 729 F.3d

10  917, 922 (9th Cir. 2013).  Since the parties do not identify the date the right to sue letter was

11  received and Defendants do not rebut it, the presumption applies.  The Ninth Circuit has clarified

12  that "[t]he three-day period does not include the day of mailing, but does include the last day of

13  the period.  However, if the last day of the period is a Sunday or legal holiday, the period

14  continues to run until the end of the next day that is not a Sunday or legal holiday."  *Dandino,*

15  *Inc.*, 729 F.3d at 922 n.4.  Here, three days from January 12, 2017 (not including that date), is

16  Monday, January 16, 2017.  Since January 16, 2017, was a federal holiday, however, Plaintiff is

17  correct that the presumed date of receipt is Tuesday, January 17, 2017.  Because his Complaint

18  was filed exactly 90 days after this date, the Court finds the suit is timely.  Accordingly,

19  Defendants' motion for summary judgment based on the argument that Plaintiff's claims are

20  time-barred is DENIED.

21                     *ii.      Preclusion*

22         Defendants argue Plaintiff's discrimination and retaliation claims (Claims One through

23  Eight) are barred by res judicata and collateral estoppel.  (*See* ECF No. 22-1 at 18–21.)  In

24  opposition, Plaintiff asserts his claims are not barred because ALJ decisions do not have

25  preclusive effect.  (*See* ECF No. 25 at 11–14.)  The Court will first determine whether preclusive

26

27   [7]      Plaintiff also asserts his FEHA claims are timely because there is a one-year of statute of
     limitations (ECF No. 25 at 10), which Defendants do not rebut in their reply (*see* ECF No. 27).
28   The Court agrees with Plaintiff.  *See* Cal. Gov't Code § 12965(d).

1    effect may be given to the decisions with respect to each challenged notice.  After conducting this

2    threshold inquiry, the Court will then evaluate whether claim and/or issue preclusion applies.

3        In general, the Supreme Court has held that "when a state agency 'acting in a judicial

4    capacity . . . resolves disputed issues of fact properly before it which the parties have had an

5    adequate opportunity to litigate,' federal courts must give the agency's factfinding the same

6    preclusive effect to which it would be entitled in the State's courts."  *Univ. of Tennessee v. Elliott*

7    (*Elliott*), 478 U.S. 788, 799 (1986) (internal citation omitted).  With respect to Title VII claims

8    specifically, however, the *Elliott* court concluded that unreviewed administrative determinations

9    are not accorded preclusive effect:

10
> Under 42 U.S.C. § 2000e-5(b), the [EEOC], in investigating
> discrimination charges, must give "substantial weight to final
11
> findings and orders made by State or local authorities in proceedings
> commenced under State or local [employment discrimination] law.
12
> As we noted in *Kremer*, it would make little sense for Congress to
> write such a provision if state agency findings were entitled to
13
> preclusive effect in Title VII actions in federal court.

14   *Id.* at 795 (internal citation omitted); *see also Peterson v. State of Cal. Dep't of Corr. and Rehab.*,

15   451 F. Supp. 2d 1092, 1105 (E.D. Cal. 2006) (rejecting defendants' argument that the State

16   Personnel Board's decision should be given res judicata or collateral estoppel effect to bar

17   plaintiff's Title VII claim).  This principle has been affirmed by the Ninth Circuit, which has held

18   "[t]he clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys issue

19   preclusive effect only if rendered or reviewed by a court."  *McInnes v. State of Cal.*, 943 F.2d

20   1088, 1093 (9th Cir. 1991); *cf. Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982)

21   (Title VII claim precluded where agency decision was affirmed by both an administrative appeal

22   board and the Appellate Division of the New York Supreme Court).  The Supreme Court has also

23   extended this principle to claims brought under the ADEA.  *Astoria Fed. Sav. & Loan Ass'n v.*

24   *Solimino* (*Solimino*), 501 U.S. 104, 110–11 (1991) ("[T]he federal courts should recognize no

25   preclusion by state administrative findings with respect to age-discrimination claims.").

26        Here, Plaintiff challenged the first layoff notice through an administrative hearing.

27   (DSUF ¶ 12.)  ALJ Engeman found the Board's decision to eliminate Spanish "was neither

28   arbitrary nor capricious," but also found the decision to eliminate a 1.0 FTE was not warranted.

1 | (*Id.* at ¶ 16; PSDF ¶ 16.)  Plaintiff sought judicial review of ALJ Engeman's decision through the

2 | writ proceeding, in which Commissioner Bicego issued a final decision holding that "the Board

3 | reasonably exercised its discretion to reduce services" (DSUF ¶ 22), but also that "the Board

4 | prejudicially abused its discretion in eliminating the 1.0 FTE Spanish instructor position held by

5 | [Plaintiff] when the actual reduction was 0.7 FTE" (PSDF ¶ 22).  As ALJ Engeman's decision

6 | was judicially reviewed by Commissioner Bicego through the writ proceeding,[8] the final decision

7 | may be accorded the same preclusive effect to which it would be entitled in state court.  *See*

8 | *Elliott*, 478 U.S. at 795; *McInnes*, 943 F.2d at 1093.

9 | Plaintiff also challenged the second layoff notice through an administrative hearing.

10 | (DSUF ¶ 32.)  ALJ Smith found the Board's decision to eliminate Spanish "was a proper exercise

11 | of its discretion."  (*Id.* at ¶ 35).  Plaintiff did not request reconsideration of ALJ Smith's decision,

12 | nor did he file a petition for writ of administrative mandate for judicial review.  (*Id.* at ¶¶ 36–37.)

13 | As this decision was not judicially reviewed in any manner, it cannot be accorded preclusive

14 | effect.  *See Elliott*, 478 U.S. at 795; *McInnes*, 943 F.2d at 1093.

15 | Based on the foregoing, the Court finds Commissioner Bicego's decision with respect to

16 | the first layoff notice may be entitled to preclusive effect.  The Court will turn next to

17 | Defendants' claim and issue preclusion arguments with respect to this decision.

18 | *a)  Claim Preclusion*

19 | With respect to Plaintiff's claims arising from the first layoff notice (Claims One through

20 | Eight), Defendants argue Plaintiff is precluded from bringing his claims of discrimination and

21 | retaliation because "the primary right asserted in the prior actions, as well as in this case, is the

22 | right to continued employment," and "[a]ll of Plaintiff's alleged causes of action arose in

23 |

24 | [8]    The California Constitution provides for court commissioners to perform "subordinate judicial duties" subject to the stipulation of the parties.  Cal. Const. art. VI, §§ 21–22.  Every

25 | court commissioner has the power to "[a]ct as a temporary judge when otherwise qualified so to act and when appointed for that purpose, or by written consent of an appearing party."  Cal. Civ.

26 | Proc. Code § 259(e).  A court commissioner who sits as a temporary judge has "full judicial powers" and his or her orders "are as final and nonreviewable as those of a permanent judge."  *In*

27 | *re Brittany K.*, 96 Cal. App. 4th 805, 812 (2002) (quoting *In re Mark L.*, 34 Cal. 3d 171, 178 (1983)).  Commissioner Bicego therefore exercised all the powers of a superior court judge in

28 | the writ proceeding.

15

1   conjunction with, or because of, his alleged wrongful termination." (ECF No. 22-1 at 19.) In

2   opposition, Plaintiff maintains generally that the writ proceeding and ALJ decisions do not have

3   preclusive effect over his Title VII and ADEA claims, but does not discern between decisions that

4   have and have not received judicial review. (ECF No. 25 at 11–13 (citing *Elliott*, 478 U.S. 788;

5   *Solimino*, 501 U.S. at 112–13).) Nor does Plaintiff address the "primary right" issue. (*See id.*)

6          Res judicata, or claim preclusion, "prevents relitigation of the same cause of action in a

7   second suit between the same parties or parties in privity with them." *Mycogen Corp. v.*

8   *Monsanto*, 28 Cal. 4th 888, 896 (2002). "The preclusive effect accorded a state court judgment in

9   a subsequent federal court proceeding is determined by reference to the laws of the rendering

10   state." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 250 (9th

11   Cir. 1992) (citing 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S.

12   373, 380 (1985)). The Court therefore looks to the claim preclusion rules of California. Under

13   California law, claim preclusion "arises if a second suit involves (1) the same cause of action (2)

14   between the same parties (3) after a final judgment on the merits in the first suit." *DKN Holdings*

15   *LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015).

16          California courts have employed the "primary rights" theory to determine whether two

17   proceedings involve the same cause of action. *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th

18   788, 797 (2010). This theory provides that a cause of action "arises out of an antecedent primary

19   right and corresponding duty and the delict or breach of such primary right and duty by the person

20   on whom the duty rests." *Id.* at 797–98. The cazuse of action refers specifically to "the right to

21   obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory

22   (common law or statutory) advanced." *Id.* at 798. Additionally, "a plaintiff's primary right is

23   defined by *the legally protected interest* which is harmed by defendant's wrongful act, and is not

24   necessarily coextensive with the *consequence* of that wrongful act." *Henderson v. Newport-Mesa*

25   *Unified Sch. Dist.*, 214 Cal. App. 4th 478, 499–500 (2013) (emphasis in original) (citing cases).

26          California courts have held that "a claim alleging employment discrimination in violation

27   of FEHA is based on a plaintiff's distinct primary right to be free from discrimination."

28   *Henderson*, 214 Cal. App. 4th at 502 (citing *George v. Cal. Unemployment Ins. Appeals Bd.*, 179

1  Cal. App. 1475 (2009)) ("[T]he employee's claim of wrongful suspension actually invoked two

2  separate primary rights: first, the employee's 'right to continued employment,' protected by the

3  civil service system[;] and second, her separate 'right to be free from invidious discrimination and

4  from retaliation for opposing discrimination,' protected by FEHA.").

5        Here, the writ proceeding and the instant discrimination and retaliation claims alleging

6  violations of Title VII, the ADEA, and FEHA do not involve the same primary rights.  The writ

7  proceeding concerned the following issues: (1) whether Plaintiff "was given proper notice of the

8  special meeting held by the Board on May 12, 2015 to consider ALJ Engeman's Proposed

9  Decision"; (2) "whether the Board abused its discretion in laying him off from his 1.0 FTE

10 position as the District's only Spanish instructor, rather than reducing his position by 0.7 FTE";

11 and (3) whether Plaintiff "had 'bumping rights' to fill a position in Education 670, the Critical

12 Skills Lab."  (ECF No. 24-2 at 58.)   Thus, the primary right at issue in the writ proceeding was

13 the right to Plaintiff's continued employment, whether as a Spanish instructor or not.  The instant

14 action, by contrast, involves Plaintiff's "distinct primary right to be free from discrimination."

15 *See Henderson*, 214 Cal. App. 4th at 502.

16       Defendants rely extensively on *Takahashi v. Bd. of Educ.*, 202 Cal. App. 3d 1464, 1474

17 (1988), arguing that, pursuant to claim preclusion, a "final judgment serves as a bar not only to

18 the issues litigated but to those that could have been litigated at the same time."  (ECF No. 22-1 at

19 19 (emphasis removed).)  Defendants argue "Plaintiff had the right to interpose any defense to his

20 termination at the administrative hearings and in the [w]rit proceeding," and therefore "had the

21 ability during these proceedings to present evidence of [these] claims."  (*Id.* at 19–20.)  The Court

22 finds *Takahashi* is inapposite to the instant case.  In *Takahashi*, "[a]ll of plaintiff's alleged causes

23 of action . . . [arose] in conjunction with or as a result of the alleged wrongful termination of her

24 employment."  *Takahashi*, 202 Cal. App. 3d at 1476.  The plaintiff "specifically allege[d] that

25 each act complained of caused the dismissal (wrongful discharge, conspiracy, unconstitutional

26 discharge, discharge in violation of state civil rights) or was a consequence of the

27 termination (emotional distress, damages), part and parcel of the violation of the single primary

28 right, the single harm suffered."  *Id.*  The *Takahashi* court rejected the plaintiff's reliance on

1   *Agarwal v. Johnson*, 25 Cal. 3d 932, 955 (1979), highlighting that a prior federal court's

2   determination of claims under Title VII did not bar claims raised in a subsequent state court

3   proceeding alleging claims for defamation and intentional infliction of emotional distress

4   "because the harm for which Agarwal recovered damages in the state court action was different"

5   and "distinct from employment discrimination." *Takahashi*, 202 Cal. App. 3d at 1475.  Unlike

6   *Takahashi*, Plaintiff's causes of action do not solely arise "as a result of the alleged wrongful

7   termination of [his] employment" and are not "part and parcel of the violation of a single primary

8   right." *Id.* at 1476.

9          As the first element requiring the same cause of action is not met, Plaintiff is not claim-

10  barred from bringing his discrimination and retaliation claims under Title VII, the ADEA, and

11  FEHA.

12                                      *b)  Issue Preclusion*

13         Defendants argue Plaintiff's "Title VII, ADEA, and FEHA retaliation and discrimination

14  claims are barred by collateral estoppel because a defense to Plaintiff's claims is that the District

15  acted with a legitimate business objective" and the issue of his termination has been litigated

16  three times in prior proceedings.  (ECF No. 22-1 at 20–21.)  In opposition, Plaintiff maintains

17  none of his claims are barred by collateral estoppel because "the issues of whether Defendants

18  discriminated or retaliated against Plaintiff were neither litigated nor decided in the prior

19  proceedings."  (ECF No. 25 at 13.)  Plaintiff also contends, even if the prior proceedings had

20  preclusive effect, Defendants had no legitimate reason for eliminating his position in its entirety,

21  as Commissioner Bicego found that Defendants "prejudicially abused their discretion."  (*Id.* at

22  13–14.)

23         Collateral estoppel, or issue preclusion, provides that a party cannot relitigate an issue the

24  party fully and fairly litigated on a previous occasion.  *In re Marriage of Boblitt*, 223 Cal. App.

25  4th 1004, 1028 (2014).  While claim preclusion prevents parties from relitigating a specific cause

26  of action, issue preclusion is broader in the sense that "the doctrine may also preclude a party to

27  prior litigation from redisputing issues therein decided against him, even when those issues bear

28  on different claims raised in a later case."  *Smith v. ExxonMobil Oil Corp.*, 153 Cal. App. 4th

1   1407, 1414 (2007).  Issue preclusion applies "(1) after final adjudication (2) of an identical issue

2   (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was

3   a party in the first suit or one in privity with that party."  *DKN Holdings LLC*, 61 Cal. 4th at 825.

4        The "identical issue" element "addresses whether 'identical factual allegations' are at

5   stake in the two proceedings, not whether the ultimate issues or dispositions are the same."

6   *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511–12 (2009) (internal citation omitted).  "In

7   order for the determination of an issue to be given preclusive effect, it must have been necessary

8   to a judgment."  *Creative Ventures, LLC v. Jim Ward & Assocs.*, 195 Cal. App. 4th 1430, 1451

9   (2011) (internal quotations and citation omitted).

10       The Court finds Plaintiff's arguments persuasive.  None of the factual allegations

11  contained within Plaintiff's petition for a writ of mandate initiating the writ proceeding contained

12  allegations of discrimination and/or retaliation based on race, national origin, or age.  (*See* 24-2 at

13  41–49.)  Rather, the allegations were all specifically related to whether Plaintiff received proper

14  notice of the special meeting of the Board to consider ALJ Engeman's proposed decision,

15  whether the Board abused its discretion in laying Plaintiff off from a 1.0 FTE position, and

16  whether Plaintiff had "bumping rights."  (*See id.*)  Consequently, allegations of discrimination

17  and/or retaliation based on race, national origin, or age could not have been necessary to the

18  judgment in the writ proceeding.  As the second element requiring an identical issue in the first

19  suit and the second suit is not met, Plaintiff is not issue-barred from bringing his discrimination

20  and retaliation claims under Title VII, the ADEA, and FEHA.

21       Accordingly, Defendants' motion for summary judgment based on res judicata and

22  collateral estoppel is DENIED.

23                    *iii.*        *Failure to Exhaust Administrative Remedies for Race*

24                               *Discrimination (Claims Five and Six)*

25       Defendants argue Plaintiff failed to exhaust his administrative remedies with respect to his

26  race discrimination claims, as his "EEOC complaint did not include race as an alleged factor in

27  his claims of discrimination[,] the box was not marked indicating race was a factor[,] nor did the

28  factual statements give rise to racial discrimination either."  (ECF No. 22-1 at 14.)  Defendants

1  contend the terms "Latino" and "Hispanic," which Plaintiff uses to identify himself, "are

2  associated with national origin, not race." (*Id.*)  Therefore, "Plaintiff failed to put [them] on

3  notice of [this] claim" and they "were not afforded the opportunity to immediately investigate the

4  claim of race discrimination." (*Id.*)  In opposition, Plaintiff asserts the factual statement

5  contained in his EEOC complaint "clearly includes race as a basis of discrimination" as it states:

6  "In addition, the new interim Dean of Instruction made offending ethnic and *racial* comments

7  about Latinos." (ECF No. 25 at 7 (emphasis in original).)  Plaintiff maintains that even though

8  the "race" box was not checked on the charge, "the factual statement was reasonably sufficient to

9  impart adequate notice of the race claims . . . given the express reference to offensive comments

10  based on race," as "in the context of discrimination against Latinos or Hispanics, . . . there is little

11  difference between discrimination based on race and discrimination based on national origin."

12  (*Id.* at 8.)

13        To bring a Title VII claim in federal court, a plaintiff must exhaust administrative

14  remedies by "filing a timely charge with the EEOC, or the appropriate state agency," which

15  allows the agency "an opportunity to investigate the charge" and "serves the important purposes

16  of giving the charged party notice of the claim and narrowing the issues for prompt adjudication

17  and decision." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citing

18  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002); *EEOC v. Farmer Bros. Co.*, 31

19  F.3d 891, 899 (9th Cir. 1994)).  "Although allegations of discrimination not included in a

20  plaintiff's EEOC charge generally may not be considered by a federal court, . . . jurisdiction

21  extends over all allegations of discrimination that either fell within the scope of the EEOC's

22  *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of

23  the charge of discrimination." *Id.* (emphasis in original) (internal quotations and citations

24  omitted).  The Ninth Circuit has clarified that civil claims are "reasonably related to allegations in

25  the charge to the extent that those claims are consistent with the plaintiff's original theory of the

26  case." *Id.* (citing *B.K.B.*, 276 F.3d at 1100).

27        The Court finds Plaintiff's argument persuasive.  As Plaintiff noted, he explicitly alleged

28  in the first EEOC charge that "the new Interim Dean of Instruction made offending ethnic and

1  racial comments about Latinos in general." (ECF No. 24-2 at 100.)  Although this phrase was not

2  explicitly referenced in the second EEOC charge, the first EEOC charge was referenced in the

3  allegations and attached.  (*See* ECF No. 24-4 at 2–14.)  The Court finds Plaintiff's Title VII and

4  FEHA claims alleging discrimination on the basis of race "can reasonably be expected to grow

5  out of" the first and second EEOC charges and are "consistent with [P]laintiff's original theory of

6  the case." *Freeman*, 291 F.3d at 636.  The Court therefore finds Plaintiff has adequately

7  exhausted administrative remedies to bring his claims alleging discrimination on the basis of race.

8  Accordingly, Defendants' motion for summary judgment based on failure to exhaust

9  administrative remedies is DENIED.

10                    *iv.        National Origin and Race Discrimination (Claims Three through*

11                    *Six)*

12         Defendants argue summary judgment should be granted on Plaintiff's claims for national

13  origin and race discrimination in violation of Title VII and FEHA because: (1) Plaintiff cannot

14  prove a prima facie case as there is a discrepancy about the timing of the discriminatory acts at

15  issue; and (2) three tribunals have determined the District's decision to eliminate the Spanish

16  program was within its discretion and Plaintiff was not qualified to teach anything besides

17  Spanish.  (ECF No. 22-1 at 23–24.)  In opposition, Plaintiff asserts he has presented sufficient

18  evidence to establish a prima facie case of discrimination.  (ECF No. 25 at 16.)  Plaintiff also

19  contends that even assuming "Defendants satisfied their burden to produce evidence of legitimate,

20  lawful reasons" for his employment decision, summary judgment fails because he can establish

21  Defendants' justifications were pretextual.  (*Id.*)

22         Title VII provides that an employer may not "discriminate against any individual with

23  respect to his compensation, terms, conditions, or privileges of employment, because of such

24  individual's race . . . or national origin."  42 U.S.C. § 2000e-2(a)(1).  FEHA uses largely the same

25  language and promotes the same objective as Title VII.  *See* Cal. Gov't Code § 12940(a); *Guz v.*

26  *Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000); *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998).  As a

27  result, the Title VII framework is applied to claims brought under FEHA, including

28

1  discrimination claims brought under a disparate treatment theory.[9]  *Metoyer v. Chassman*, 504

2  F.3d 919, 941 (9th Cir. 2007), *abrogated on other grounds by Long v. Alameda Unified Sch.*

3  *Dist.*, 764 F. App'x 585 (9th Cir. 2019); *Guz*, 24 Cal. 4th at 354.

4      A plaintiff bringing a Title VII or FEHA racial discrimination action under a theory of

5  disparate treatment must demonstrate at trial that his or her employer took one or more adverse

6  employment actions against the plaintiff because of the plaintiff's national origin or

7  race.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93, 99–100 (2003); *Heard v. Lockheed*

8  *Missiles & Space Co.*, 44 Cal. App. 4th 1735, 1748 (1996).  An adverse employment action is one

9  that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment."

10  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *see also Yanowitz v. L'Oreal USA,*

11  *Inc.*, 36 Cal. 4th 1028, 1052 (2005) (stating "an adverse employment action must materially affect

12  the terms and conditions, or privileges of employment to be actionable" in the FEHA context).

13      If an employer moving for summary judgment on a disparate treatment claim meets its

14  initial burden, "the plaintiff is presented with a choice regarding how to establish his or her

15  case."  *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).  The plaintiff may

16  proceed by using the burden-shifting framework first set out in *McDonnell Douglas Corp. v*

17  *Green*, 411 U.S. 792 (1973), or alternatively, may produce direct or circumstantial evidence that a

18  discriminatory reason motivated the defendant in taking the challenged actions against the

19  plaintiff.  *McGinest*, 360 F.3d at 1122; *see Heard*, 44 Cal. App. 4th at 1749 (indicating a FEHA

20  disparate treatment plaintiff need not proceed under *McDonnell Douglas* if the plaintiff has direct

21  evidence).  The plaintiff retains the burden of persuasion throughout, regardless of whether or not

22  the plaintiff chooses to use the *McDonnell Douglas* framework.  *Texas Dep't of Cmty. Affairs v.*

23  *Burdine* (*Burdine*), 450 U.S. 248, 256 (1981); *Guz*, 24 Cal. 4th at 356.

24  ///

25  _____

[9]      "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as
26  well as, in some cases, practices that are not intended to discriminate but in fact have a
disproportionately adverse effect on minorities (known as 'disparate impact')."  *Ricci v.*
27  *DeStefano*, 557 U.S. 557, 577 (2009).  Although not explicitly stated by Plaintiff, by alleging
intentional discrimination on the part of Defendants, it appears that Plaintiff is bringing his
28  discrimination claims under a disparate treatment theory.

1    Under *McDonnell Douglas*, a Title VII or FEHA plaintiff "must first establish a prima

2  facie case of discrimination."  *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123

3  (9th Cir. 2000); *Guz*, 24 Cal. 4th at 354 ("In particular, California has adopted the three-stage

4  burden-shifting test established by the United States Supreme Court for . . . claims of

5  discrimination . . . based on a theory of disparate treatment.").  A plaintiff must show: "(1) he

6  belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse

7  employment action; and (4) similarly situated individuals outside his protected class were treated

8  more favorably."  *Chuang*, 225 F.3d at 1123; *Guz*, 24 Cal. 4th at 355 (setting forth substantially

9  the same elements in the FEHA context).  The fourth element can also be characterized as "some

10  other circumstance suggests discriminatory motive."  *Guz*, 24 Cal. 4th at 355.

11    This shifts the "burden of production, but not persuasion, . . . to the employer to articulate

12  some legitimate, nondiscriminatory reason for the challenged action."  *Chuang*, 225 F.3d at

13  1123–24.  "To accomplish this, the defendant must clearly set forth, through the introduction of

14  admissible evidence, the reasons for" the challenged adverse employment actions.  *Lyons v.*

15  *England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Burdine*, 450 U.S. at 255).  Whether a

16  defendant has met its burden of production involves "no credibility assessment."  *St. Mary's*

17  *Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  "In other words, the factfinder's general duty to

18  draw all reasonable inferences in favor of the nonmovant does not require that the court make a

19  credibility determination on the defendant's evidence at the summary judgment stage, even if it

20  has reason to disbelieve that evidence."  *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir.

21  2004).

22    If the defendant meets this burden of production, any presumption that the defendant

23  discriminated "drops from the case."  *St. Mary's Honor Ctr.*, 509 U.S. at 507–11; *see also Guz*,

24  24 Cal. 4th at 356 (explaining that the presumption "disappears" at this point).  At this point, the

25  plaintiff must be given the opportunity to demonstrate that the proffered reason or reasons were

26  pretext for intentional discrimination.  *Burdine*, 450 U.S. at 255–56; *Guz*, 24 Cal. 4th at 356.

27    The plaintiff may offer additional evidence to rebut the employer's proffered reasons but

28  the plaintiff is not necessarily required to produce evidence in addition to the evidence produced

1    to establish the prima facie case.  *Lyons*, 307 F.3d at 1112–13; *Chuang*, 225 F.3d at 1127.  This is

2    because a reasonable factfinder may infer "the ultimate fact of intentional discrimination" without

3    additional proof once the plaintiff has made out his prima facie case if the factfinder believes that

4    the employer's proffered nondiscriminatory reasons lack credibility.  *Lyons*, 307 F.3d at 1112–13

5    (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)); *see*

6    *also Chuang*, 225 F.3d at 1127 (same).

7          To establish that a defendant's nondiscriminatory explanation is pretext for

8    discrimination, a plaintiff may rely on circumstantial evidence or direct evidence or both.  *See*

9    *Chuang*, 225 F.3d at 1127.  Typically, circumstantial evidence offered by a plaintiff to prove

10   pretext will take one of two forms.  *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th

11   Cir. 2005); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan.

12   6, 2004).  The plaintiff may "make an affirmative case that the employer is biased."  *Coghlan*,

13   413 F.3d at 1095; *Stegall*, 350 F.3d at 1066 (describing the first option as "persuading the court

14   that a discriminatory reason more likely motivated the employer").  Or, the plaintiff may "make

15   his case negatively, by showing that the employer's proffered explanation for the adverse action

16   is 'unworthy of credence.'"  *Coghlan*, 413 F.3d at 1095.

17         In employment discrimination actions, the plaintiff "need produce very little evidence to

18   overcome an employer's motion for summary judgment . . . because the ultimate question is one

19   that can only be resolved through a searching inquiry — one that is most appropriately conducted

20   by a factfinder, upon a full record."  *Chuang*, 225 F.3d at 1124 (internal quotations and citation

21   omitted).  Consequently, the "requisite degree of proof necessary to establish a prima facie case

22   for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the

23   level of preponderance of the evidence."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.

24   1994), *as amended on denial of reh'g* (July 14, 1994) (emphasis omitted).  "The plaintiff need

25   only offer evidence which gives rise to an inference of unlawful discrimination."  *Id.* (internal

26   quotations and citation omitted).  "Establishment of the prima facie case in effect creates a

27   presumption that the employer unlawfully discriminated against the employee."  *Burdine*, 450

28   U.S. at 254.

1        Both parties agree the burden-shifting framework established by *McDonnell Douglas* is

2  applicable to the instant summary judgment motion.  (*See* ECF No. 22-1 at 22; ECF No. 25 at

3  14.)  Accordingly, the Court will first evaluate whether Plaintiff can establish a prima facie case

4  of discrimination and retaliation, then whether Defendants can demonstrate a legitimate,

5  nondiscriminatory reason for the adverse employment action, and finally whether Plaintiff can

6  demonstrate that the reason is pretextual.

7        *a)   Establishment of a Prima Facie Case*

8        Plaintiff has not attempted to show any similarly-situated individuals outside his protected

9  classes were treated more favorably.  (*See* ECF Nos. 1, 25.)  Therefore, the Court must determine

10  whether "other circumstances surrounding the adverse employment action give rise to an

11  inference of discrimination."  *Peterson v. Hewlett-Packard Co.* (*Hewlett-Packard*), 358 F.3d 599,

12  603 (9th Cir. 2004).

13        It appears from the parties' briefing that only the fourth element of a prima facie case is in

14  dispute.  The parties do not dispute the first element is satisfied because Plaintiff identifies as

15  Latino.  (*See* ECF No. 22-1 at 15; *see also* ECF No. 25 at 6, 14–19.)  Defendants do not address

16  the second or third elements in their briefing.  (*See* ECF Nos. 22-1, 27.)  Accordingly, as to the

17  second element, the Court will assume for the purposes of this motion only that Plaintiff was

18  qualified for his position as a Spanish instructor.  As to the third element, the Court will treat the

19  two layoff notices as the adverse employment actions at issue in Plaintiff's disparate treatment

20  claims.  Termination of employment "certainly constitutes an adverse employment action."

21  *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002).  Thus, the third

22  element is met.

23        As to the fourth element, Plaintiff argues the actions of Weathers, an Interim Dean (*see*

24  ECF No. 25 at 6), demonstrate a discriminatory motive.  In support of this claim, Plaintiff points

25  to his declaration, his deposition, and Ismail's (a coworker's) deposition to establish Weathers

26  acted with a discriminatory animus "against Latinos in general and Plaintiff specifically" in

27  recommending Plaintiff's termination.  (*Id.* at 16 (citing ECF No. 25-4 ¶¶ 8–10, 18; ECF No. 23-

28  2 at 80–81; ECF No. 23-1 at 12–15).  During Plaintiff's deposition, the line of questioning about

1   his race and national origin went as follows:

2       Q. Any other reason why you believe your age was a factor in being
3   terminated from employment at College of the Siskiyous?

4       A. I think also my nationality, my origin.

5       Q. So not being born in the United States, is that what you mean?

6       A. Uh-huh, not necessarily not being born in the United States, but
they thought maybe it was easy to get rid of me, I was just going to
7   go away than dealing with somebody who was going to fight.

8       Q. So your race and [n]ational origin in your mind was the same
thought process?

9       A. Not my race, but my origin nationality.

10      Q. So why do you think your [n]ational origin played any role in the
decision to eliminate the Spanish program at College of the
11  Siskiyous?

12      A. Because I heard Dennis Weathers making some racial comments,
ethnic comments to me, direct statements to me in the past.

13      Q. Like what?

14
15      A. He asked me if I was a legal resident in the United States, also he
asked me if I was allowed to work here in the U.S., also he said that
all Latino people are traitors, all Latinos are traitors, he also said that
16  people in Tijuana, Mexico, they are all dirty people.

17      Q. Anything else you can think of?

18      A. No, I just remember those.

19  (ECF No. 23-1 at 13–14.)  When Ismail was asked during his deposition whether he was "aware

20  of any specific instances of . . . Weathers using racial derogatory terms towards anybody," he

21  testified:

22      I won't say using the N word or something like that.  I never heard
him say those kinds of things.  But in terms of, you know, by
association to the group he made comments like that.  So, okay, Latin
23  players because this is how Latin players are or this is how Latins are
so therefore—you know, that's—because say, for example, if they're
24  lazy then it's reflected in the way they approach baseball . . .

25  (ECF No. 23-2 at 80–81.)  When asked to clarify about "specific recollections," Ismail testified

26  Weathers made comments in the context of baseball about "Latin players being lazy, or you

27  know, they get special treatment or they deserve special treatment or why are they getting special

28  treatment."  (ECF No. 23-3 at 81.)

1   Plaintiff asserts Weathers was also "directly involved in Plaintiff's termination insofar as

2   he recommended to both the President and the Board that Plaintiff's position be eliminated,

3   despite the admitted intention to continue offering Spanish classes in the 2015[–]2016 academic

4   year and the Board's stated desire to offer Spanish I and II in the Fall 2015 and Spring 2016,

5   respectively." (ECF No. 25 at 15–16.)

6   Based on the foregoing, Plaintiff's inference of discrimination is as follows: Plaintiff and

7   Ismail have directly heard Weathers make discriminatory comments against Latinos (and Plaintiff

8   has heard comments made against him personally); Weathers recommended to the President and

9   the Board that Plaintiff's position be eliminated; and therefore the two layoff notices Plaintiff

10  received were issued at least in part due to discrimination based on his race and national origin.

11  Plaintiff's inference is supported by the evidence to which he cites, and thus the Court finds that

12  Plaintiff can establish a prima facie case of discrimination. Accordingly, Plaintiff has created a

13  rebuttable "presumption that [Defendants] unlawfully discriminated against [him]." *Lyons*, 307

14  F.3d at 1112. Thus, the burden of production is shifted to Defendants "to articulate some

15  legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123–24.

16  *b)  Defendants' Legitimate, Nondiscriminatory Reason*

17  Defendants argue "three separate and impartial tribunals have evaluated Plaintiff's claim

18  on the merits and determined that the District's decision to eliminate the Spanish program was

19  within their discretion." (ECF No. 22-1 at 23–24; *see also* ECF No. 27 at 7.) Defendants contend

20  "[b]ecause Plaintiff was not qualified to teach anything except Spanish, his layoff was the

21  necessary result of complete elimination of the Spanish program." (ECF No. 22-1 at 23 – 24; *see*

22  *also* ECF No. 27 at 7.)

23  With respect to this reason proffered by Defendants, the Court agrees with Plaintiff, who

24  contends that "Defendants do not accurately portray those decisions and they have no preclusive

25  effect." (ECF No. 25 at 16.) The Court has evaluated the Judgment on the petition for writ of

26  mandate, as well as Commissioner Bicego's Statement of Decision (the judicial review of

27  Plaintiff's challenge of the first layoff notice) (*see* ECF No. 24-4 at 70–89), and finds Defendants

28  mischaracterize Commissioner Bicego's decision. Defendants are correct that Commissioner

1   Bicego concluded that "[g]iven [the fiscal and administrative] difficulties and the historically low

2   enrollment in its Spanish classes, the Board reasonably exercised its discretion to reduce services"

3   (*id.* at 81), but that is not the full decision.  Commissioner Bicego also found "the Board

4   prejudicially abused its discretion in eliminating the 1.0 FTE Spanish instructor position held by

5   [Plaintiff] when the actual reduction was 0.7 FTE."  (*Id.*)  Commissioner Bicego ultimately

6   granted the petition and ordered "that a peremptory writ of mandate issue compelling

7   [Defendants] to reinstate [Plaintiff] to a 0.33 FTE position teaching Spanish for the 2015–2016

8   school year and to compensate him for salary, benefits and medical expenses incurred."  (*Id.* at

9   88.)

10        Despite the fact that Plaintiffs did not reinstate Plaintiff to a 0.33 FTE position and instead

11   issued a second layoff notice terminating him from further employment, the Court at this juncture

12   does not "make a credibility determination on the defendant's evidence . . . even if it has reason to

13   disbelieve that evidence."  *Bodett*, 366 F.3d at 742.  Thus, any presumption that Defendants

14   discriminated is "drop[ped] from the case," and Plaintiff has the opportunity to prove the

15   nondiscriminatory, legitimate reason proffered by Defendants is pretextual.  *St. Mary's Honor*

16   *Ctr.*, 509 U.S. at 507–11; *Burdine*, 450 U.S. at 255–56; *Guz*, 24 Cal. 4th at 356.

17                          *c)  Plaintiff's Showing of Pretext*

18        Plaintiff has the opportunity to offer "evidence sufficient to permit a rational trier of fact

19   to find that [Defendants] intentionally discriminated against him because of his [race or national

20   origin]."  *Wallis*, 26 F.3d at 892.  Plaintiff makes three distinct arguments, as follows.

21        First, Plaintiff notes that Commissioner Bicego stated in her decision:

22             One of the Board members, in comments prior to voting to eliminate
             [Plaintiff's] position, stated her understanding that some Spanish
23             would continue to be offered: " . . . we're hoping that the program
             can grow by offering the Spanish I class, and see if we can't get more
24             interest, and then the Spanish II class, and then build from there with
             our current instructor [*i.e.*, Plaintiff]."
25

26   (ECF No. 25 at 17 (citing ECF No. 24-2 at 81).)  Plaintiff contends this statement "establishes"

27   that the Board wanted enrollment in Spanish classes to increase and it "intended" to continue

28   building the program beyond the 2015–2016 academic year.  (*Id.*)  Plaintiff maintains

28

1  Defendants' motion "sets forth no evidence as to why its administrators, including Weathers,

2  acted contrary to the Board's wishes by refusing to allow Plaintiff to continue teaching online

3  courses and to teach a summer study-abroad course (which would have enabled the program to

4  grow) and by seeking to eliminate Plaintiff's position a second time in the Spring of 2016."  (*Id.*)

5  Defendants do not address this issue in their briefing.  (*See generally* ECF Nos. 22-1, 27.)

6          Second, Plaintiff notes that Defendants eliminated his position on the recommendation of

7  Weathers, who claimed "that enrollment was too low to make [Plaintiff's] continued employment

8  cost-effective for [COS]."  (ECF No. 25 at 17.)  Plaintiff argues enrollment increased

9  significantly for the Spring 2015 semester after he began teaching online classes and "Defendants

10  intended to and did continue offering Spanish classes in the 2015[–]2016 academic year," both of

11  which "belie the claim of low enrollment — at least to the extent that enrollment was so low that

12  complete elimination of Plaintiff's position was warranted."  (*Id.*)  With respect to this point,

13  Defendants maintain Plaintiff has failed to show "that the actual decision-makers at the District

14  were acting as a conduit" for Weathers, which "requires a showing that the District, who may not

15  have had any discriminatory motive, merely 'rubber-stamped' the actions of the supervisor, rather

16  than operating independently."  (ECF No. 27 at 9.)  However, at this juncture, Plaintiff need only

17  present evidence to raise a dispute of material fact as to the elements of his claim.  *See Anderson*,

18  477 U.S. at 251–52.

19          Third, Plaintiff contends Weathers informed Ismail that he "recommended Plaintiff's

20  termination in part because Plaintiff was allegedly involved in stealing money from COS," which

21  Plaintiff maintains is "an accusation that is patently false and contradicts the claimed reason of

22  low enrollment in Spanish."  (ECF No. 25 at 18.)  Plaintiff cites to Ismail's declaration, which

23  states Weathers informed him that Plaintiff's "employment was terminated in part because of

24  allegations that [Plaintiff] was involved in stealing money from COS years prior."  (ECF No. 25-2

25  at 1.)  Attached to the declaration is an email from Ismail to Plaintiff to that effect, which in

26  relevant part states the following:

27          It is on several occasions through these interactions that [Weathers]
            expressed his influence (real or imagined) in getting a former
28          colleague fired from COS but more importantly, his allegations of

impropriety on the part of another colleague. Since I have no way of knowing and frankly, don't make much of these issues as they do not involve me personally, I have not given them much thought. However, since [Plaintiff's] termination (firing?), [Weathers] had on several occasions suggested that he was in part responsible because as [Plaintiff's] Department Chair years earlier, [Weathers] recalled instances in which [Plaintiff] was allegedly involved in stealing money from COS. The same allegations that contributed to the firing of another colleague much earlier was also partly responsible for the dismissal of [Plaintiff] this time around.

(*Id.* at 4.) Ismail's deposition recounts this conversation with Weathers and confirms the contents of his email to Plaintiff. (*See* ECF No. 23-2 at 85–87, 90–94.) Defendants do not address this issue in their briefing and therefore concede the issue. (ECF Nos. 22-1, 27.)

Based on the foregoing, as well as the proof submitted by Plaintiff in support of his prima facie case, the Court finds Defendants' "proffered nondiscriminatory reasons lack credibility." *See Lyons*, 307 F.3d at 1112–13. The Court therefore finds Plaintiff sufficiently raises a disputed issue of material fact as to whether there were "other circumstances surrounding the adverse employment action giv[ing] rise to an inference of discrimination." *Hewlett-Packard*, 358 F.3d at 603; *see Anderson*, 477 U.S. at 251–52. The Court therefore declines to find as a matter of law that Defendants did not discriminate against Plaintiff on the basis of national origin or race in violation of Title VII and FEHA. Accordingly, Defendants' motion for summary judgment as to Plaintiff's Title VII and FEHA discrimination claims based on national origin and race is DENIED.

v.      *Retaliation (Claims Six and Seven)*

Defendants argue summary judgment should be granted as to Plaintiff's retaliation claims because Plaintiff cannot prove any of the elements under Title VII and FEHA. (*See* ECF No. 22-1 at 24.) Defendants contend "three prior proceedings . . . all found that Plaintiff's layoff was made pursuant to a legitimate business decision" and that his layoff was not the result of retaliation, but "the necessary result of elimination of the program." (*Id.*) Defendants note the first layoff notice was issued prior to Plaintiff's discrimination charge and the second layoff notice was issued for the same reasons. (*Id.*) In opposition, Plaintiff asserts he "engaged in protected activities when he complained internally and to the EEOC of discrimination." (*See*

1    ECF No. 25 at 20.)  Plaintiff implies the two layoff notices constitute adverse employment actions

2    and explicitly maintains there is a genuine issue of material fact with respect to the existence of a

3    causal link between his protected activity and his termination.  (*Id.* at 20–21.)

4         A plaintiff opposing a motion for summary judgment on retaliation claims under Title VII

5    and FEHA may use the *McDonnell Douglas* burden-shifting framework.  *McGinest*, 360 F.3d at

6    1124 (setting out the standard for Title VII); *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th

7    216, 244 (2016) (setting out the standard for FEHA).  To plead a prima facie case of retaliation, a

8    plaintiff must point to sufficient evidence to permit a reasonable factfinder to conclude that: (1)

9    he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there

10   was a causal link between his activity and the employment decision.  *McGinest*, 360 F.3d at 1124;

11   *Moore*, 248 Cal. App. 4th at 244.

12        With respect to the third causation element, "a plaintiff may establish a causal link

13   between the protected activity engaged in and the adverse action taken by circumstantial

14   evidence, including the employer's knowledge of the protected activity and the proximity in time

15   between the protected action and the adverse employment act."  *Goins v. Cty. of Merced*, 185 F.

16   Supp. 3d 1224, 1234 (E.D. Cal. 2016) (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir.

17   1988); *Passantino v. J&J Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000)).  "At the

18   prima facie stage of a retaliation case, [t]he causal link element is construed broadly so that a

19   plaintiff merely has to prove that the protected activity and the negative employment action are

20   not completely unrelated."  *Poland v. Chertoff*, 494 F.3d 1174, 1180 n.2 (9th Cir. 2007) (internal

21   quotation omitted).

22        As with disparate treatment cases, once the prima facie case is established, the burden of

23   production shifts to the employer to present a legitimate, non-retaliatory reason for the adverse

24   employment action.  *McGinest*, 360 F.3d at 1124; *Loggins v. Kaiser Permanente Internat.*, 151

25   Cal. App. 4th 1102, 1112 (2007).  If the employer carries this burden, a plaintiff must

26   demonstrate a genuine issue of material fact as to whether the reason advanced by the employer is

27   pretext for retaliation.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see*

28   *Loggins*, 151 Cal. App. 4th at 1112.  The Ninth Circuit has determined that "[i]n some cases,

31

1   temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for

2   purposes of both the prima facie case and the showing of pretext." *Dawson v. Entek Intern.*, 630

3   F.3d 928, 937 (9th Cir. 2011).  Under FEHA, however, temporal proximity alone is not sufficient

4   to establish pretext.  *Loggins*, 151 Cal. App. 4th at 1112 (evidence of temporal proximity "*only*

5   *satisfies* the plaintiff's initial burden" and therefore "an employee seeking to avoid summary

6   judgment cannot simply rest on the prima facie showing, but must adduce substantial additional

7   evidence from which a trier of fact could infer the articulated reasons for the adverse employment

8   action were untrue or pretextual") (internal quotations omitted) (emphasis in original).

9   *a)  Establishment of a Prima Facie Case*

10   With respect to the first element, Plaintiff engaged in a protected activity by filing EEOC

11   charges of discrimination.  (*See* ECF No. 24-2 at 96–105; ECF No. 24-4 at 1–14); *see also Raad*

12   *v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("Protected activity

13   includes the filing of a charge or a complaint . . .").  With respect to the second element, it is

14   undisputed that Plaintiff suffered an adverse employment action when the Board voted to

15   terminate Plaintiff's position and then voted to eliminate the entire Spanish program.  (DSUF ¶¶

16   17, 29; PSDF ¶¶ 17, 29); *see also Higdon v. Mabus*, 5 F. Supp. 3d 1199, 1212 (S.D. Cal. 2014)

17   ("An adverse employment action is a tangible change in working conditions that produces a

18   material employment disadvantage[,] which generally include a termination of employment, a

19   demotion, a material loss of benefits, or . . . significantly diminished material responsibilities."

20   (internal quotations and citation omitted).)

21   With respect to the third element, Plaintiff asserts the Board expressed an intention to

22   offer Spanish I and II in the 2015–2016 academic year and build the program.  (ECF No. 25 at

23   20–21.)  Plaintiff cites to the remarks by Board Member Carol Cupp made at the May 12, 2015

24   Board Meeting, immediately prior to the vote to eliminate Plaintiff's position:

25   Ms. Cupp: Well, I just wanted to say, too, that yes, I think that for
     myself, Spanish is extremely important.  My children were both in
26   Spanish [immersion].  I really see the advantage of Spanish.  But,
     again, we're hoping that the program can grow by offering the
27   Spanish I class, and see if we can't get more interest, and then the
     Spanish II class, and then build from there with our current instructor.
28   So there is still that opportunity.  We are not eliminating the Spanish

1  program.  We're just having to downsize a bit to what's realistic.

2  (ECF No. 25-4 at 10–11.)  Plaintiff notes that after he "complained internally and to the EEOC of

3  discrimination in January 2016," Defendants decided in March 2016 "to completely eliminate

4  offering Spanish courses for an indefinite period of time into the future."  (ECF No. 25 at 20–21.)

5  The causation element here is "inferred from timing alone where an adverse employment action

6  follows on the heels of protected activity."  *Davis*, 520 F.3d at 1087, 1094 (adverse action

7  occurred nearly four months after EEOC complaint was filed and three days after the EEOC

8  dismissed the plaintiff's complaint); *see also Loggins*, 151 Cal. App. 4th at 1110, 1112–13

9  (adverse action occurred seven days after protected conduct).

10      Based on the foregoing, Plaintiff's inference of retaliation is as follows: because Plaintiff

11  engaged in a protected activity by filing EEOC charges of discrimination, Defendants retaliated

12  against him when the Board subsequently voted to eliminate the entire Spanish program, thereby

13  terminating Plaintiff's employment, despite an "intention" to continue or build the program.

14  Accordingly, Plaintiff has established a prima facie case of retaliation, and the burden of

15  production shifts to Defendants to articulate a legitimate, non-retaliatory reason for termination of

16  his employment.  *See McGinest*, 360 F.3d at 1124; *Loggins*, 151 Cal. App. 4th at 1112–13.

17              *b)  Defendants' Legitimate, Non-Retaliatory Reason*

18      Defendants argue that "[b]ecause Plaintiff was not qualified to teach anything except

19  Spanish, his layoff was the necessary result of elimination of the program — not the result of

20  retaliation."  (ECF No. 22-1 at 24.)  Defendants contend this is "evidenced by the fact that

21  Plaintiff's program and his position were being eliminated long prior to Plaintiff's discrimination

22  charges being filed."  (ECF No. 27 at 7.)  Defendants additionally provide the same reason for the

23  retaliation claims as they do for the discrimination claims — namely, that it was a legitimate

24  business decision to eliminate the Spanish program and Plaintiff's position due to budgetary

25  reasons.  (*Id.*)  As previously noted, the Court at this juncture does not "make a credibility

26  determination on the defendant's evidence . . . even if it has reason to disbelieve that evidence,"

27  but merely determines Defendants have adequately presented a legitimate non-discriminatory

28  reason for the action.  *Bodett*, 366 F.3d at 742.  Thus, the burden shifts back to Plaintiff to

1   demonstrate a genuine issue of material fact as to whether these reasons advanced by Defendants

2   are merely pretext for retaliation.  *Brooks*, 229 F.3d at 928; *Loggins*, 151 Cal. App. 4th at 1112.

3                                    *c)  Plaintiff's Showing of Pretext*

4        "To establish that a non-retaliatory explanation is pretext for discrimination, plaintiffs

5   may rely on circumstantial evidence, which . . . must be specific and substantial to create a

6   genuine issue of material fact."  *Goins*, 185 F. Supp. 3d at 1236 (internal quotations and citation

7   omitted).  Plaintiff asserts there are genuine issues of material fact with respect to the third

8   element — whether there was causation between his protected activity and his termination.  (*See*

9   ECF No. 25 at 20–21.)  Plaintiff maintains "Defendants actively thwarted [his] efforts to continue

10  increasing enrollment by denying him opportunities to teach a summer course and teach online in

11  the 2015–2016 school year despite other instructors having such opportunities."  (*Id.* at 21.)

12       In support of this assertion, Plaintiff points to his own declaration, in which he states the

13  following: (1) his "student enrollment increased significantly" once he received approval to teach

14  online; (2) Weathers informed him he would be teaching his Spanish class during the Fall 2015

15  semester in person, which "significantly negatively impacted the enrollment in the class"; (3)

16  Weathers "arbitrarily denied" Plaintiff's request to teach a Spanish study-abroad course over the

17  summer, despite interest from "at least 14 students"; (4) Plaintiff has taught study-abroad courses

18  in the past and is unaware of any other instructor at COS who has been denied such an

19  opportunity; (5) Todd Scott, the new Vice President, informed Plaintiff "he was reluctant to allow

20  [Plaintiff to teach online]" because he heard rumors from Weathers that several students

21  complained about Plaintiff with respect to his online courses during the Spring 2015 semester,

22  even though Plaintiff received no formal grievances and only two informal complaints from

23  students — for "the first time in 20 years"; (6) Weathers "created a severely misleading picture

24  [of Plaintiff's online class] by disclosing only negative information to Mr. Scott and omitting

25  [Plaintiff's] long history without a student grievance and all the positive feedback [Plaintiff]

26  received from students who took [his] Spring 2015 online Spanish classes"; and (7) Mr. Scott

27  denied Plaintiff's request to teach online courses during the Spring 2016 semester.  (ECF No. 25-

28  3 at 3–6.)

                                              34

1     Plaintiff further notes Defendants' justification for terminating the Spanish program at the

2     second administrative law proceeding was based on low enrollment, but enrollment in the

3     Spanish I and II classes increased during the Spring 2015 semester.  (*Id.*)  Plaintiff points to

4     Weathers's deposition transcript from the April 13, 2015 hearing before ALJ Engeman, in which

5     Weathers testified that "there [was] a bump in enrollment . . . as a result of offering Spanish

6     online."  (ECF No. 25-4 at 7.)

7     In sum, a Board Member with the District stated in 2015 that the District was not

8     eliminating the Spanish program and the Board Member expressed hope that it could grow.

9     Weathers testified enrollment was up with online classes, but Plaintiff was not allowed to teach

10    further online classes after the Spring 2015 semester or teach a study-abroad course in the

11    summer of 2015.  Defendants' purportedly non-retaliatory reason for eliminating the Spanish

12    program and Plaintiff's employment was due to budgetary concerns.  Plaintiff suggests that if

13    Defendants' actions were actually motivated by budgetary reasons, the District would have taken

14    every step it could to increase enrollment and thereby funding for COS.  (*See* ECF No. 25 at 20–

15    21.)  Based on the foregoing, the Court finds Plaintiff has presented sufficient circumstantial

16    evidence to raise a genuine issue of material fact as to whether the elimination of the Spanish

17    program and Plaintiff's termination was actually due to budgetary reasons.  *Goins*, 185 F. Supp.

18    3d at 1236.

19    Viewing the remainder of the facts in the light most favorable to Plaintiff and drawing all

20    reasonable inferences in his favor, the Court finds that a genuine issue of material fact exists as to

21    whether there is a causal link between the protected activity and the adverse employment action at

22    issue.  *See Anderson*, 477 U.S. at 255.  The Court therefore declines to find as a matter of law that

23    Defendants did not retaliate against Plaintiff in violation of Title VII or FEHA.  Accordingly,

24    Defendants' motion for summary judgment as to Plaintiff's Title VII and FEHA retaliation claims

25    is DENIED.

26                    *vi.*        *Age Discrimination (Claims One and Two)*

27    Defendants argue summary judgment should be granted on Plaintiff's age discrimination

28    claims because Plaintiff cannot prove any of the elements required under the ADEA and FEHA.

1    (ECF No. 22-1 at 21–22.)  Defendants contend "there was no other instructor retained by the

2    District to teach Spanish — regardless of age or qualifications" and that "[i]t has repeatedly been

3    decided that the District's decision to eliminate Spanish was made pursuant to a legitimate

4    business decision.  (*Id.* at 22.)  Defendants further maintain the *McDonnell Douglas* burden-

5    shifting framework does not apply to age discrimination claims and that Plaintiff must instead

6    prove age was the "but-for" cause of the employer's adverse decision.  (*Id.* (citing *Gross v. FBL*

7    *Fin. Servs.*, 557 U.S. 167, 174 (2009)).)

8            In opposition, Plaintiff asserts "a less senior employee was retained to teach a course for

9    which Plaintiff may have been eligible and entitled to bump" and Defendants do not provide any

10   evidence as to why they retained this less senior employee.  (ECF No. 25 at 19.)  Plaintiff also

11   contends Defendants admit taking Plaintiff's high salary into account when they made the

12   decision to terminate Plaintiff entirely and deny him the ability to "bump" less senior faculty.

13   (*Id.*)  Plaintiff suggests employment decisions based on salary adversely impact older workers

14   because "the oldest faculty members at [COS] also earn the most."  (*Id.* at 20.)

15           As an initial matter, the Court notes Defendants' contention that the *McDonnell Douglas*

16   framework is inapplicable under *Gross v. FBL Financial Services* is unavailing.  The Ninth

17   Circuit has limited *Gross*'s holding to the trial context and has concluded the *McDonnell Douglas*

18   framework is applicable at summary judgment for ADEA claims.  *Shelley v. Geren*, 666 F.3d

19   599, 607–08 (9th Cir. 2012).  "The *Shelley* court explained that because *Gross* involved a case

20   that had already progressed to trial, it did not address the evidentiary framework applicable to a

21   motion for summary judgment and in fact explicitly noted that it has not definitively decided

22   whether the evidentiary framework of *McDonnell Douglas* utilized in Title VII cases is

23   appropriate in the ADEA context."  *K.H. v. Sec'y of the Dep't of Homeland Sec.*, 263 F. Supp. 3d

24   788, 797–98 (N.D. Cal. 2017) (internal quotations and citation omitted).  As previously noted,

25   California courts have held the *McDonnell Douglas* framework is applicable at summary

26   judgment for FEHA claims.  *Guz*, 24 Cal. 4th at 354.  Thus, this Court will apply the *McDonnell*

27   *Douglas* framework in evaluating Plaintiff's age discrimination claims.

28   ///

An ADEA and FEHA plaintiff alleging age discrimination may proceed on a disparate treatment or disparate impact theory.  *Palmer v. United States*, 794 F.2d 534, 536–37 (9th Cir. 1986); *see Krylova v. Genentech Inc.*, 37 F. Supp. 3d 1156, 1163 (N.D. Cal. 2014).  As Plaintiff argues intentional discrimination, he proceeds on a disparate treatment theory.[10]  To establish a prima facie case of age discrimination under the disparate treatment theory, a plaintiff must show he "[1] was a member of a protected class, [2] was performing his job in a satisfactory manner, [3] experienced an adverse employment action, and [4] was replaced by a substantially younger employee with equal or inferior qualifications."  *K.H.*, 263 F. Supp. 3d at 797.  The fourth element can also be expressed as "some other circumstance suggests discriminatory motive."  *Krylova*, 37 F. Supp. 3d at 1163; *Guz*, 24 Cal. 4th at 355.

*a)  Establishment of a Prima Facie Case*

Although Defendants contend Plaintiff cannot establish "each of [the] elements" of his age discrimination claims (ECF No. 22-1 at 22), the parties do not dispute in their briefing that Plaintiff is over 40 years old,[11] was performing his job in a satisfactory manner, and experienced an adverse employment action in the form of termination.[12]  (*See generally* ECF Nos. 22-1, 25, 27.)  Therefore, only the fourth element is at issue.  Plaintiff points to Commissioner Bicego's decision in the writ proceeding, which states the court found insufficient evidence presented as to

---

[10]    Plaintiff appears to suggest he may also proceed under the disparate impact theory, as he contends that, as a result of the fact that the oldest faculty members at COS earn the most, "adverse employment decisions based on salary adversely impact older workers, in violation of the law."  (ECF No. 25 at 20.)  However, Plaintiff does not argue Defendants engage in "certain outwardly neutral employment practices," or that there is "a significantly adverse or disproportionate impact on persons of a particular [age] produced by [Defendants'] facially neutral acts or practices," both of which are required to assert a disparate impact claim.  *See K.H.*, 263 F. Supp. 3d at 794.  Accordingly, the Court evaluates Plaintiff's claim under the disparate treatment theory only.

[11]    The ADEA specifically prohibits employment discrimination against individuals 40 years or older.  *See* 29 U.S.C. § 631(a).  FEHA more generally provides that it is an unlawful employment practice for an employer, because of age, to discharge a person from employment.  *See* Cal. Gov't Code § 12940(a).

[12]    As noted previously, courts have held that termination is an adverse employment action.  *See Higdon*, 5 F. Supp. 3d at 1212.

37

1   "whether a regular employee with less seniority was retained to render a service for which

2   [Plaintiff] may have been eligible."  (ECF No. 25 at 19 (citing ECF No. 24-2 at 88).)  Contrary to

3   Plaintiff's assertion that this means "a less senior employee was retained to teach a course for

4   which Plaintiff may have been eligible and entitled to bump" (*id.*), the matter was remanded to

5   determine whether Plaintiff actually had "bumping rights."  (ECF No. 24-2 at 88.)  Plaintiff also

6   cites to the deposition of Nancy Miller[13] for his proposition that Defendants admit "taking

7   [Plaintiff's] high salary into account" when they made the decision to lay him off entirely and

8   deny him the ability to "bump" less senior faculty.  Nancy Miller testified, in relevant part, to the

9   following:

10          Q.  Was  [Plaintiff's]  salary  something  that  was  taken  into
           consideration in the decision to lay him off?

11          A. His salary?  No.  It was more about the program and enrollment
12         in the program.

           Q.  It was — well, it was the program in relation to the cost of the
13         program; right?

14          A. That's true.

15          Q. Okay.  And so his rate of pay is part of the cost of the program?

16          A. Right.  When we're analyzing FTE versus — yeah.  Yes.

17          Q. Okay.  So his salary would have been a factor in that decision?

18          A. Yes, in that regard, yes.  You know, could — could the program
19         sustain a full-time faculty member cost, so yes.

20   (ECF No. 25-4 at 46–47.)

21          Based on the foregoing, Plaintiff's inference of discrimination is as follows: Defendants

22   took Plaintiff's salary into consideration when deciding whether or not to terminate his

23   employment or allow him to "bump" less senior faculty; making employment decisions based on

24   salary "adversely impacts older workers"; and therefore not permitting Plaintiff to "bump"

25   another employee amounts to discrimination on the basis of age.  Plaintiff's inference is

26

27   _____
     [13]      Nancy Miller is designated as Defendants' "Person Most Knowledgeable under Rule
     30(b)(6) on various topics, including the reasons for the adverse employment actions taken
28   against Plaintiff at issue in this [a]ction."  (ECF No. 25-4 at 2.)

1   supported by the evidence to which he cites, and thus the Court finds that Plaintiff can establish a

2   prima facie case of age discrimination.  Accordingly, Plaintiff has created a rebuttable

3   "presumption that [Defendants] unlawfully discriminated against [him]."  *Lyons*, 307 F.3d at

4   1112.  Thus, the burden of production is shifted to Defendants "to articulate some legitimate,

5   nondiscriminatory reason for the challenged action."  *Chuang*, 225 F.3d at 1123–24.

6                              *b)  Defendants' Legitimate, Non-Discriminatory Reason*

7            Defendants argue "Plaintiff cannot establish a prima facie case because there was no other

8   instructor retained by the District to teach Spanish — regardless of age or qualification."[14]  (ECF

9   No. 27 at 7.)  Defendants further argue that salary is the foundation of Plaintiff's age

10  discrimination claim, but "[a]t the community college level, salary is based on education and

11  experience pursuant to the collective bargaining agreement."  (*Id.*)  In essence, Defendants'

12  argument is that taking Plaintiff's salary into account when determining whether to terminate his

13  employment is not necessarily a proxy for age.  However, the Court has found that Plaintiff has

14  established a prima facie case based on Defendants' decision to consider salary in its employment

15  decisions.  This implicitly rejects Defendants' argument that salary is not a proxy for age.  Courts

16  have also accepted the "salary as a proxy for age" argument in age discrimination cases.  *See*

17  *K.H.*, 263 F. Supp. 3d at 799.  Most importantly, it does not appear that Defendants assert any

18  reason for denying Plaintiff's "bumping rights."  Defendants do not argue that the purportedly

19  younger person they did not let Plaintiff "bump" had better education or experience, or that there

20  was no other position available for which Plaintiff was qualified to "bump."  The Court therefore

21  finds Defendants have not identified a sufficiently non-discriminatory reason.  This means the

22  third *McDonnell Douglas* step — an evaluation of Plaintiff's showing of pretext — is

23  unnecessary.

---

14        The Court finds, here again, that Defendants' argument is not well-taken.  Plaintiff's age
discrimination argument is not that he was replaced by a younger person, which Defendants seem
to be arguing.  Defendants are not going to hire anyone new to replace Plaintiff as a Spanish
instructor "regardless of age or qualification" if they are terminating the entire Spanish program.
Defendants may be attempting to argue, albeit incoherently, that there is no age discrimination
because Plaintiff's position was eliminated and he was not replaced by anyone, including a
younger person.

1    The Court declines to find as a matter of law that Defendants did not discriminate against

2    Plaintiff on the basis of age in violation of the ADEA and FEHA.  Accordingly, Defendants'

3    motion for summary judgment as to Plaintiff's ADEA and FEHA discrimination claims based on

4    age is DENIED.

5                  D.       <u>Defamation Claim (Claim Nine)</u>

6    Defendants argue Plaintiff's defamation claim is time-barred because Plaintiff failed to

7    present his claim within six months of the accrual date, as is required under the California Tort

8    Claims Act ("CTCA").  (ECF No. 22-1 at 16 (citing Cal. Gov't Code §§ 900 *et seq.*).)

9    Defendants note Plaintiff alleges "Weathers made defamatory statements about him sometime

10   between January 1, 2015 and May 1, 2015," and "Plaintiff's first indication that he may have

11   been aware of the alleged defamatory statement was on January 6, 2016, when he submitted the

12   internal EEO complaint stating that he had been 'defamed.'"  (*Id.* at 17 (citing ECF No. 1 at 9–

13   10).)  Consequently, Defendants maintain the cause of action accrued, at the earliest, on January

14   1, 2015 (when Plaintiff alleges the defamatory statements began), and at the latest, on January 6,

15   2016 (the date of Plaintiff's internal EEO complaint).  (*Id.*)  Defendants also argue that assuming

16   Plaintiff's claim was timely, he still failed to file his lawsuit within six months of the rejection

17   date.  (*Id.* at 18 (citing Cal. Gov't Code § 945.6).)

18   In opposition, Plaintiff asserts his claim is tolled by the delayed discovery rule, as

19   "Plaintiff was ignorant of the fact Weathers had made the [defamatory] statement" until Ismail

20   informed him.  (ECF No. 25 at 21.)  Plaintiff contends "each utterance of a slanderous statement

21   gives rise to a separate cause of action" and "[t]he statement at issue here is [Weathers']

22   statement to Mr. Ismail implying that Plaintiff was involved in theft of money from the COS."

23   (*Id.* at 22.)  In contrast, the defamation referenced in the January 2016 internal EEO complaint

24   was about Weathers' "negative and misleading statements to VP Todd Scott about student

25   complaints against Plaintiff."  (*Id.*)  As noted previously, Plaintiff objects to the introduction of

26   Defendants' rejection letter of his claim.  (*Id.* at 22–23.)

27   "The [CTCA] requires, as a condition precedent to suit against a public entity, the timely

28   presentation of a written claim and the rejection of the claim in whole or in part."  *Mangold v.*

1    *Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  "The CTCA applies to state law

2    claims wherever those claims are brought, and the requirement that a plaintiff must affirmatively

3    allege compliance with the CTCA applies in federal court."  *Butler v. Los Angeles Cty.*, 617 F.

4    Supp. 2d 994, 1001 (C.D. Cal. 2008).  The CTCA applies to actions for damages against local

5    public entities or public employees acting within the scope of that employee's public

6    employment.  Cal. Gov't Code § 950.2.  "The timely presentation of a claim under the [CTCA] is

7    not merely a procedural requirement but is an actual 'element of the plaintiff's cause of action.'"

8    *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) (quoting *Shirk v.*

9    *Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007), *superseded by statute on other grounds by*

10   *Rubenstein v. Doe No. 1*, 3 Cal. 5th 903 (2017)).  Under the CTCA, "[a] claim relating to a cause

11   of action for death or injury . . . shall be presented . . . not later than six months after the accrual

12   of the cause of action."  Cal. Gov't Code § 911.2.  "[A] cause of action for defamation accrues at

13   the time the defamatory statement is published, and publication occurs when the defendant

14   communicates the defamatory statement to a person other than the person being defamed."  *Roger*

15   *v. Cty. of Riverside*, 44 Cal. App. 5th 510, 523 (2020) (internal quotations and citation omitted).

16   "However, in circumstances where a reasonably diligent plaintiff could not have been expected to

17   know about the publication . . . the accrual date tolls until the plaintiff discovers or reasonably

18   should have discovered the publication."  *Id.* at 523–24 (internal quotations and citation omitted).

19          Here, the defamatory statement at issue is Weathers' statement to Ismail regarding

20   Plaintiff's alleged theft of money from COS, as Plaintiff submitted Ismail's email regarding

21   Weathers' statement with his government claim form.  (*See* ECF No. 24-4 at 186–90.)  Ismail

22   emailed Plaintiff on March 30, 2016.  (*Id.* at 190.)  According to Defendants' rejection letter of

23   Plaintiff's government claim, Plaintiff presented the claim to the District on August 10, 2016.

24   (ECF No. 24-4 at 192.)  Assuming without deciding that Plaintiff "discovered the publication"

25   when Ismail emailed him, Plaintiff's claim was timely presented to the District.  However,

26   pursuant to California Government Code § 945.6, Plaintiff had six months from the date of the

27   rejection letter to file a court action on his claim.  Cal. Gov't Code § 945.6 ("[A]ny suit brought

28   against a public entity on a cause of action for which a claim is required to be presented . . . must

1  be commenced . . . not later than six months after the date [written] notice is personally delivered

2  or deposited in the mail.").  The District's rejection letter is dated September 14, 2015 (ECF No.

3  24-4 at 192), and Plaintiff ultimately filed the instant action on April 17, 2017 (ECF No. 1).

4  Because Plaintiff waited more than six months to file suit, Defendants are correct that Plaintiff is

5  time-barred from bringing this claim.  Accordingly, Defendants' motion for summary judgment

6  as to Plaintiff's defamation claim is GRANTED.

7      **IV.**   **CONCLUSION**

8         For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 22)

9  is hereby GRANTED in part and DENIED in part as follows:

10      1.    Defendants' Motion for Summary Judgment as to Plaintiff's Claims One through

11          Eight is DENIED; and

12      2.    Defendants' Motion for Summary Judgment as to Plaintiff's Claim Nine is

13          GRANTED.

14  The parties are hereby ordered to file a Joint Notice of Trial Readiness within thirty (30) days of

15  the electronic filing date of this Order indicating their readiness to proceed to trial and proposing

16  trial dates.

17         IT IS SO ORDERED.

18

19  Date:  August 20, 2021

20

21                            Troy L. Nunley

22                            United States District Judge

23

24

25

26

27

28